### In re BROOKLYN FERRY CO. OF NEW YORK.

### THE RICHARD CROKER (two cases).

(District Court, E. D. New York. February 5, 1902.)

COLLISION—STEAM VESSELS CROSSING—CONFUSION OF SIGNALS.
    A ferryboat and tug each *held* in fault for a collision in East river for improper maneuvers and for changing signals for crossing, causing confusion in the management of both.

In Admiralty. Proceedings for limitation of liability by the owner of the ferryboat Alaska. On libels against the Alaska and the tug Richard Croker to recover damages for personal injuries resulting from collision.

Wilcox & Green, for petitioners.
James C. Cropsey, for libelants O'Donnell.
John Whalen, for city of New York.

THOMAS, District Judge. The ferryboat Alaska, bound from the foot of Greenpoint avenue, Brooklyn, for Twenty-Third street, New York, passed under the stern of a tow, and thereafter collided with the tug Croker, that, facing north, had left the Twenty-Second street pier, and swung around to starboard, thereby gaining a heading down stream.

The captain of the Alaska testified that the Alaska gave one whistle when 500 or 600 yards from the Croker, who was slightly on the Alaska's starboard bow, and swinging to starboard. The Croker not answering, the Alaska gave another single whistle, the vessels being then about 600 or 700 feet apart. The Alaska sheered a little to starboard, the Croker then coming almost head-on to the Alaska. Then

the Alaska rang a bell to stop and go back, the Croker being then about 300 or 350 feet away. Then the Croker gave one whistle, the Croker being 300 or 350 feet away. Then the Croker blew two whistles, and the Alaska answered with two immediately. The Croker sheered slightly to port, being then about 600 feet from the Alaska. At this time the Alaska was backing. Question having arisen as to how, with the Alaska backing and the Croker sheering to port, the vessels could come together, the answer was, "I don't know what happened aboard the Croker, but she jumped right around to her starboard."

The captain of the Croker says that when he had swung the Croker around into the river and straightened he stopped his engine to let the Alaska come in. The Croker was running with the ebb tide for a few seconds, and the ferryboat kept coming across. When the Alaska came across under the tow's stern, she sheered up. "It looked as if she wanted to come between us and the tow. When I see he was going that way, I blowed him one whistle. He sheered his boat the other way, and blowed me two. The Croker did not answer the two whistles, but blew alarm whistles and started backing, hooked up." This witness says that after stopping his engines he did not move them until he moved to go back, which he did when the vessels were 200 feet apart.

The position of the captain of the Croker seems to be this: That he stopped 600 or 700 feet away from the Alaska, to allow the latter to cross his bow, although the Croker had the right of way, but the Croker did not blow two whistles for that purpose. When the Alaska came from up under the tow she changed her course to starboard, and thereupon the Croker blew her one whistle, but the Alaska answered with two; whereupon the Croker, who had been stopped in the water, blew alarm whistles and reversed. It is not understood how such navigation on the part of either vessel is defensible. When the Alaska agreed to the two signals, she should have tried to carry them out, and not leave the burden upon the Croker alone. What she did do was to go astern, as if she had given an alarm whistle, which she did not, but should have given when the first signal was crossed. The Alaska's story is that she gave two single whistles, received one from the Croker, then two from the Croker, and answered the two, although she was already going astern, as if in expectation of collision, but gave no alarm signal. The Croker had been swinging to starboard, and answered and obeyed the single whistle, but for some reason, probably on account of some change of direction of the ferryboat, changed her own signal, inducing the Alaska to do the same, and in the confusion that followed the collision resulted.

The libelants should have decrees against both vessels, James O'Donnell for $150, amount of the physician's bill for services to his wife, which is the only item of expense proven by him, and Susan O'Donnell for the sum of $1,500. As between the two vessels, the damages and costs will be divided.